# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-61595-Civ-COOKE/TORRES

DONNETT M. TAFFE,

        Plaintiff,

v.

SCOTT J. ISRAEL, *et al.*,

        Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS

This matter is before the Court on Donnett M. Taffe's ("Plaintiff") Motion for Sanctions ("Motion") [D.E. 64] against Scott J. Israel ("Defendant"). On April 14, 2017, Defendant timely filed his response [D.E. 76] to which Plaintiff replied on April 27, 2017. [D.E. 80]. Therefore, this Motion is now ripe for disposition. After careful consideration of the Motion, response, reply, and relevant authority, and for the reasons discussed below, Plaintiff's Motion is **DENIED**.

## I.    BACKGROUND

Plaintiff originally brought this action on May 26, 2016 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 16-009547. Plaintiff filed a five count Complaint against Deputy Wengert, in his individual and official capacity, and Sheriff Israel, in his individual and official capacity. Specifically, Count I is a state law claim for assault and battery against Deputy Wengert and Count II is a 42 U.S.C § 1983 claim under the Fourth and

1

Fourteenth Amendments against Deputy Wengert. Count III is a state tort claim against Sheriff Israel, Count IV is a claim which appears to be both under state and federal law against Sheriff Israel, individually, and Count V is a 42 U.S.C. § 1983 claim against Sheriff Israel. On July 5, 2016, Defendants removed the state court action to this Court on the basis of federal question jurisdiction. The gist of Plaintiff's Complaint is that the Defendants are responsible for the wrongful death of Steven Jerold Thompson. Plaintiff alleges that Deputy Wengert killed Mr. Thompson and that the violation occurred as a result of the policies, practices, and customs instituted by Sheriff Israel. Accordingly, Plaintiff seeks an award of damages for loss of income, services, protection, care, assistance, companionship, comfort, guidance, counsel and advice, funeral and burial expenses, permanent mental and emotional injuries, court costs, punitive damages, and attorney's fees.

## II. ANALYSIS

Plaintiff's Motion seeks to impose sanctions pursuant to Federal Rule of Civil Procedure 37 ("Rule 37") against Defendant for his alleged failure to comply with the Court's Discovery Order on January 25, 2017. On that date, the Court granted in part Plaintiff's motion to compel and ruled that "[b]ecause there appears to be serious discovery issues with Defendants' document productions, Defendants are compelled to produce a 30(b)(6) corporate representative for deposition." [D.E. 45]. In response to the Court's Order, Defendant produced five corporate representatives for deposition. Because the corporate deponents were allegedly deficient in numerous ways, Plaintiff requests that Rule 37 sanctions be imposed against

Defendant for failing to comply with his discovery obligations and the Court's Discovery Order.

Courts may impose sanctions pursuant to Rule 37 if the alleged misconduct was not "substantially justified" or if the sanctions would not be "unjust." FED. R. CIV. P. 37. Rule 37(d) authorizes an array of sanctions as identified in Rule 37(b)(2)(A)(i)-(vi), including "dismissing the action in whole or in part." S*ee also Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) ("Rule 37 empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and penalties, including dismissal with prejudice."). The dismissal of an action is considered "an extreme remedy and should not be imposed if lesser sanctions will suffice." *Navarro v. Cohan,* 856 F.2d 141, 142 (11th Cir. 1988); *see also Wanderer v. Johnston*, 910 F.2d 652, 655–56 (9th Cir. 1990) ("The [Supreme] Court in *National Hockey League* granted district courts considerable discretion to impose the extreme sanction of dismissal or default where there has been flagrant, bad faith disregard of discovery duties.") (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

District courts are accorded "'substantial discretion in deciding whether and how to impose sanctions under Rule 37.'" *Bernath v. Seavey*, 2017 WL 564941, at *4 (M.D. Fla. Feb. 13, 2017) (quoting *Chudasama v. Mazada Motor Corp.*, 123 F.3d. 1353, 1366 (11th Cir. 1997)); *see also French v. M&T Bank*, 315 F.R.D. 695, 696 (N.D. Ga. 2016) (finding that Rule 37 "gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders; however, this

discretion is guided by judicial interpretation of the rule."). "In imposing sanctions, the court may consider 'the unsuitability of another remedy, the intransigence of a party, and the absence of an excuse.'" *Bernath*, 2017 WL 564941, at *4 (citing *Watkis v. Payless ShoeSource, Inc.*, 174 F.R.D. 113, 116 (M.D. Fla. 1997)). "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal." *Id.* (citing *In re Chase and Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989) (inability to comply); *Equal Employment Opportunity Comm'n v. Troy State Univ.*, 693 F.2d 1353, 1357 (11th Cir. 1982) (simple negligence or misunderstanding)).

Courts need not make a finding of bad faith before imposing sanctions under Rule 37. In fact, "the 1970 amendments were specifically enacted to eliminate the possibility that a bad faith requirement would be read into the rule, and they contain no suggestion that bad faith should remain a prerequisite when an attorney, as opposed to a client, is subjected to sanctions." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993); *see also Carlson v. Bosem,* 2007 WL 1841067, at *2 (11th Cir. June 28, 2007) ("Defendants' contention that the district court was required to find that Dr. Bosem and his lawyer had acted in bad faith before ordering sanctions against them is also without merit.") (citing *Devaney,* 89 F.2d at 1162).

Alongside Rule 37, courts in the Eleventh Circuit have determined that under Rule 30(b)(6), "the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas." *Boland Marine &*

*Mfg. Co., Inc. v. M.V. Bright Field,* 1999 WL 280451, *3 (E.D. La. 1999) (quoting *Zappa Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 1995 WL 686715, *5 (S.D.N.Y. 1995)).  Thus, a discovery violation does not necessarily occur under Rule 30(b)(6) when a designated witness adequately testifies with respect to certain subject matter but not others, especially where the witness is not expected to be omniscient nor expected to have computer-like memory.  *See, e.g., Alexander v. FBI,* 186 F.R.D. 137, 143 (D.D.C. 1998); *EEOC v. American Int'l Group, Inc.,* 1994 WL 376052 (S.D.N.Y. 1994).

This means that a Rule 30(b)(6) deposition does not require "absolute perfection in preparation," but only "a good faith effort . . . to find out the relevant facts."  *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005).  "When it appears that a 'designee is unable to adequately respond to relevant questions on listed subjects, then the responding [organization] has a duty to timely designate additional, supplemental witnesses as substitute deponents.'"  *Ajibade v. Wilcher*, 2017 WL 119474, at *4 (S.D. Ga. Jan. 10, 2017) (quoting *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) (citations omitted)).  "All of these duties correspond to the ultimate underlying purposes of Rule 30(b)(6)—namely, preventing serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying,' which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself."

*Alexander*, 186 F.R.D. at 152 (citing FED. R. CIV. P. 30(b)(6) Advisory Committee Notes, 1970 Amendment).

Here, Defendant produced five corporate representatives for deposition to respond to Plaintiff's requests for production nos. 1-5, 6(g), 6(n), 13-17 and Plaintiff's interrogatories 12 and 13. The corporate deponents included: Diana Edwards (Administrative Coordinator, Crime Laboratory), Captain Robert Cates, Detective Steven Hoover, Ericka Pratt (Senior Background Investigator), and P.J. Goodrich (Administrative Assistant to Captain Cates). Plaintiff contends that the corporate deponents had either no knowledge of any discovery requests prior to January 2017 or, in the case of Diana Edwards, the excuse for the failure to produce the requested materials was due to "people not knowing what other people were doing . . . ." [D.E. 64]. Because the corporate deponents were allegedly deficient, Plaintiff argues that Defendant has not met his discovery obligations and continues to withhold documents, in violation of the Court's Discovery Order, that are pertinent to Plaintiff's claims.

Defendant disputes Plaintiff's broad characterization that Defendant is either intentionally withholding documents or maliciously frustrating the discovery process. Defendant argues that he oversees different divisions and departments with different personnel that respond all the time to public records requests and to discovery in litigation. At times, different people are purportedly tasked with pulling records and, in most instances, the relevant documents are not electronically stored. Furthermore, Defendant suggests that at times human error

6

is inevitable and some documents are not located in response to one request even when they were located months before in response to another request. As such, Defendant recognizes Plaintiff's concerns and has expressed his commitment to working cooperatively to resolve any outstanding discovery issues to conserve judicial resources and address any discrepancies as it relates to Defendant's discovery obligations. In light of the parties' broader arguments, we will now consider whether the corporate deponents that Defendant proffered warrant Rule 37 sanctions.

### A. *Diana Edwards*

On February 7, 2017, Defendant produced Diana Edwards, the administrative coordinator for the county's crime lab, to address Plaintiff's request for production no. 6(N). Specifically, this request sought information on all crime laboratory reports in connection with the shooting of the decedent Steven Thompson (the "Decedent"):

> 6(N). Any and all crime laboratory reports with respect to any forensic testing, and/or examination of any evidence collected and/or obtained concerning the shooting of decedent Steven Thompson on June 5, 2014 and/or his death on June 6, 2014. Said documents shall include but are not limited to, all reports, worksheets/notes, laboratory bench notes, photographs, testing data and documentation of the processing of any of the evidence.

Plaintiff argues that Ms. Edwards was unable to answer why the testing materials for fingerprint, firearm, and DNA items were not timely provided to Plaintiff in response to the initial public records request of July 17, 2015. Moreover, Ms. Edwards purportedly could not testify to the completeness of the DNA materials.

To this extent, Plaintiff believes Ms. Edwards was an inadequate corporate representative and failed to explain Defendant's deficient document productions, which should allegedly subject Defendant to Rule 37 sanctions.

But, Plaintiff's argument for sanctions, as it relates to Ms. Edwards, is undermined by the fact that she thoroughly explained the discrepancies in Defendant's document productions during her deposition and took affirmative steps to correct them going forward. As Defendant explains, Ms. Edwards highlighted what was done in order to first comply with Plaintiff's public records requests, and second, with discovery requests in this case. Ms. Edwards responded by producing all documents that she believed complied with both of Plaintiff's requests. When it was determined that certain DNA related documents were not included in the computer storage program that Ms. Edwards used, she went back and requested the additional information from the investigator that handled the evidence. Ms. Edwards then testified that her requests failed to reach the applicable personnel to determine if more documents were responsive.

In order to ensure that any discovery mistakes did not happen again, Ms. Edwards called for the issue to be discussed at a meeting with the crime lab personnel. Defendant argues that Ms. Edwards went beyond what was required of her per the Court's Discovery Order and prepared screen shots and additional documents during her deposition to show Plaintiff exactly what was in the department's system and how it was viewed internally. Because Ms. Edwards' testimony thoroughly explained the reasons and the mistakes underlying

Defendant's document productions, as it relates to the crime lab, and Ms. Edwards took affirmative steps to ensure that all documents would now be available to Plaintiff going forward, the Court finds that Rule 37 sanctions on this basis are **DENIED**.

### B. *Captain Robert Cates and Ms. Goodrich*

Next, Plaintiff takes issue with the deposition testimony of Captain Robert Cates and his assistant, Ms. Goodrich. Defendant produced Captain Robert Cates as his corporate representative to answer questions in relation to interrogatory no. 13, which focused on Deputy Wengert's supervisors from 2004 to 2017:

> 13. Please state and identify the names and CCN of all persons who supervised Defendant GERALD WENGERT from February 2004 to the present, as well as the dates of said supervision.[1]

[D.E. 64]. Plaintiff argues that during his deposition, Captain Cates produced a one page list that his secretary compiled, which provided the names of all of Mr. Wengert's supervisors for the years 2004 to 2017. Plaintiff later deposed Captain Cates' secretary, Ms. Goodrich, to question her as to how she had created this list. Ms. Goodrich purportedly testified that the graph did not show with any "clarity or certainty," who was supervising Deputy Wengert at any given time, but only a range of possible supervisors:

> Q: So if an outside police agency needed to know who the supervisor was of a particular deputy sheriff on a particular date, would you be able to do that?
> A. Not for any date. If you ask me today, maybe, yesterday, but on any given day, maybe no, because it depends on what supervisor is working at that time that this deputy could be working.

---

[1] Defendant's initial discovery response was that the information requested was not tracked.

Q. So it's fair to say, then, based upon what you've done here, that there would be no way to know, let's say six months ago, who was supervising Wengert six months ago?
A. According to the documents that I gave you?
Q. Yes.
A. Not with a hundred percent accuracy.
Q. Okay. Is there anyone that would be able to determine with a hundred percent accuracy where a deputy sheriff was six months before and who was supervising him?
A. I don't know.

[D.E. 56-1].  Because both Captain Cates and Ms. Goodrich's deposition testimony could not *precisely* identify Deputy Wengert's supervisors in the years requested, Plaintiff contends that Defendant has not satisfied his discovery obligations and that sanctions must be imposed.

But, Plaintiff's argument is unpersuasive.  As an initial matter, Defendant notes that the information requested is not stored anywhere nor is it obtainable through any electronic search.  However, in an attempt to comply with the Court's Discovery Order and explain his initial discovery response, Defendant tasked Captain Cates with finding out where Deputy Wengert spent most of his time on the force.  Along with his assistant Ms. Goodrich, Captain Cates produced a list of possible supervisors at his deposition.  Despite their best efforts, the list that Ms. Goodrich and Captain Cates proffered only provided a range of possible supervisors. Defendant explains that there is no exact list of Deputy Wengert's supervisors that exists because, aside from the fact that there is no database that details supervisors for a particular deputy, law enforcement personnel move around based on shift schedules – making it an impossible task of providing this type of information to Plaintiff.

Because the deposition testimony of Captain Cates and Ms. Goodrich adequately explained the reasons for Defendant's initial discovery response, there is nothing to support Plaintiff's Motion for sanctions. Defendant thoroughly articulated why the information was unavailable, provided a list of the information requested, and produced more than one corporate deponent on the subject to ensure that Plaintiff received as much information as possible. *See, e.g., NXP B.V. v. Blackberry Ltd.*, 2013 WL 5913456, at *3 (M.D. Fla. Oct. 31, 2013) ("The designating party has a duty to designate more than one witness if necessary in order to respond to the relevant area of inquiry.") (citations omitted); *see also Alexander*, 186 F.R.D. at 152 ("[T]he purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party"). While the discovery proffered was not perfect, there is no doubt that Defendant has met his discovery obligations and explained that the information provided does not exist to the level of accuracy requested. *See Estrada v. Wass*, 2012 WL 1268533, at *2 (M.D. Pa. Apr. 16, 2012) ("[A] Rule 30(b)(6) deponent need not have perfect responses to each question"). Accordingly, Plaintiff's Motion on this basis is **DENIED**.

### C. *Detective Steven Hoover*

Third, Plaintiff argues that sanctions should be imposed because Detective Hoover was an inadequate corporate deponent. Defendant produced Detective Hoover as his representative to testify in relation to Plaintiff's production request no. 6(g) for "All photographs, audio recordings, and/or videos / DVDs concerning the

incident of June 5, 2014." Furthermore, Defendant produced Detective Hoover to confirm that all the information had been produced with respect to interrogatory no. 12:

> "Please state and identify all reports, statements, emails, audio or videotapes, CDs, or other documents made or received by any member of the Broward County Sheriff's Office concerning or relating to the incident involving the decedent, Plaintiff STEVEN THOMPSON on or about June 5, 2014."

[D.E. 58-2]. Although Detective Hoover had purportedly seen Plaintiff's deposition notice, Plaintiff argues that he produced no documents. Detective Hoover also allegedly believed that the reason he was testifying was because of audiotapes he produced on February 2, 2017. Except for a robbery that occurred, Detective Hoover was purportedly unaware of any aspect of the shooting of the Decedent and failed to confirm that all of the information requested had been produced. Therefore, Plaintiff argues that Detective Hoover's testimony ran afoul of the Court's Discovery Order and that he represents another basis for imposing sanctions against the Defendant.

Yet, Plaintiff's argument again misses the mark. Detective Hoover was the robbery investigator and Defendant produced him as a corporate deponent in order to explain an important distinction in the discovery requests that Plaintiff made and to clarify that all evidence pertaining to his investigation was turned over as soon as it was requested. In other words, as soon as it was determined by Defendant that Plaintiff wanted evidence in *both* the robbery and homicide investigation, Defendant complied with his discovery obligations.

More specifically, Defendant explains that as discovery progressed, it became clear that Plaintiff did not understand that a homicide investigation occurs separate and apart from a robbery investigation. Even if two crimes involve the same person, they are allegedly handled separately to such an extent that each has its own case number. When Plaintiff argued that Defendant did not provide all available evidence relating to the Decedent, Defendant realized that Plaintiff wanted evidence from both investigations.

The confusion apparently occurred with Plaintiff's discovery requests seeking information "involving the decedent." Defendant viewed the requests as solely relating to the homicide investigation (given the allegations in the complaint and the conduct of the parties throughout this litigation) whereas Plaintiff presumably believed that it would include anything related to the Decedent. Another reason Plaintiff was not provided the evidence relating to the robbery investigation is purportedly because the credit cards and other items belonging to the robbery victims were not in any way associated with the homicide evidence. Although this confusion delayed the production of discovery, Defendant asserts that he believes all documents and audio/video, relating to both the homicide and robbery investigations, have now been produced to Plaintiff.

Defendant's argument is well taken. The discovery dispute relating to request no. 6(g) and interrogatory no. 12 could have easily been resolved if the parties had effectively communicated with each other with respect to the scope of the documents requested. While Plaintiff believed that the Defendant would

literally provide ever document "involving the decedent," Defendant interpreted Plaintiff's discovery requests as only relating to the homicide investigation. Because Detective Hoover has now clarified how the Defendant interpreted and responded to request no. 6(g) and interrogatory no. 12, there is no basis to award sanctions – particularly since Defendant has supplemented his productions to include all documents, audio, and video relating to both the homicide and robbery investigations. *See Devaney,* 989 F.2d at 1163 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)) ("[A]n individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'"). To this extent, Plaintiff's Motion is **DENIED**.

### D. *Ericka Pratt*

Next, Plaintiff contends that Ericka Pratt's deposition testimony supports Rule 37 sanctions. Defendant produced Ms. Pratt as his corporate deponent to testify to production request no. 5:

> 5. Any and all materials, orders, directives, reports, emails, memoranda, summaries, interviews, statements, videotapes, audio recordings concerning the background investigation conducted by the Broward County Sheriff's Office with respect to the hiring of GERALD WENGERT on or about February 10, 2004

[DE 59-2]. Plaintiff merely argues that Ms. Pratt brought no documents to her deposition and presumably could not testify on any of the materials requested with

respect to the hiring of Deputy Wengert.[2]  Thus, Plaintiff suggests that Ms. Pratt was unprepared for her deposition and that Defendant must be sanctioned for failing to prepare her.  *See United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C. 1996) (a corporation is required to prepare "its Rule 30(b)(6) designee to the extent the matters are reasonably available, whether from documents, past employees, or other sources"); *United States v. Massachusetts Indus. Fin. Agency,* 162 F.R.D. 410, 412 (D. Mass.1995) (rejecting corporations' arguments that it was not required under Rule 30(b)(6) to educate its witness about actions taken by former employees of the corporation); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,* 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002) (a corporation "must provide its interpretation of documents and events").

Yet, as Defendant points out, he produced Ms. Pratt to explain that the Background Investigations department did not create its own file when Deputy Wengert was hired because he came to the Sherriff's Office as a transition employee when the Cooper City Police Department was merged into the Sherriff's Office.  As an active and full time Cooper City Police Officer, the Sherriff's Office relied on the background investigation and testing done by Cooper City.  As such, Ms. Pratt testified that Cooper City is the records custodian of that file – not the Defendant:

> Q. You were asked to bring any and all materials, orders, directives, reports, emails, memoranda, summaries, interviews statements, videotapes, audio recordings concerning the background investigation

---

[2]    This section of Plaintiff's Motion was noticeably short and lacked the requisite factual basis to support a finding for sanctions.  Rather than merely citing to deposition testimony, Plaintiff should have explained why Ms. Pratt was deficient and bolstered that argument with the necessary support.

conducted by the Broward County Sheriff's Office with respect to the hiring of Gerald Wengert on or about February 10, 2004. Did you bring any of those documents?

A. No, I don't. That's Cooper City's report.

Q. I'm sorry, what?

A. Cooper City would have that information. I don't have that information.

Q. Okay. And why would Cooper City have that information?

A. Because he is a former Cooper City employee, and we relied upon that background.

[D.E. 59]. Because Ms. Pratt adequately explained that the reason documents were not produced in connection with the hiring of Deputy Wengert was because his background file continues to reside with Cooper City, there is no basis to award sanctions against Defendant. Therefore, Plaintiff's Motion, as it relates to Ms. Pratt, is **DENIED**.[3]

## E. *Ms. Betzaida Mendia and Dee Gargotta*

Finally, Plaintiff argues that sanctions are appropriate because the Defendant was scheduled to produce Ms. Mendia as his corporate deponent to testify to production request nos. 1-4 and 13-17. Yet, her deposition was cancelled and no new date was provided to Plaintiff. Because Defendant has purportedly failed to comply with the Court's Discovery Order, Plaintiff believes sanctions must be imposed.

---

[3] The Court understands why Plaintiff may have been suspicious of Defendant's representation that he does not possess Deputy Wengert's background investigation documents, particularly since Deputy Wengert is an active employee in the Broward County Sheriff's Office. But, as Ms. Pratt indicated, the reason for the omission of these documents stems from the merging of the Cooper City Police Department with the Broward County Sheriff's Office. There is no indication that Defendant was untruthful in his discovery responses or that Defendant attempted to prevent the disclosure of this information. Instead, Plaintiff sought information that is simply not in the Defendant's possession.

But, Plaintiff's contention that Ms. Mendia's deposition was cancelled, without a new date scheduled, omits key facts that undermine Plaintiff's request for sanctions. Ms. Mendia, the Internal Affairs Case Filing Specialist, was determined to be the person most knowledgeable about Defendant's document productions relating to internal affairs. Unfortunately, Ms. Mendia went on leave pursuant to the Family Medical Leave Act as of January 2017. Ms. Mendia was the person who was originally tasked with research, preparing, and copying the documents as it related to internal affairs.

Because of Ms. Mendia's unexpected departure, Defendant produced Ms. Gargotta for deposition to testify in lieu of Ms. Mendia on March 30, 2017. Ms. Gargotta testified as to how documents are researched, investigated, and obtained in order to respond to public records requests and to litigation discovery. Defendant contends that when Ms. Gargotta began assisting with the document production in this case, she reviewed all of the requests that were related to Internal Affairs and pulled the responsive documents again. Ms. Gargotta testified that when documents are pulled for production, they have to be reviewed for redaction pursuant to Florida Statutes because certain information cannot be produced. She also testified that some of the delay in producing documents was because Plaintiff's counsel did not want to pay the initial estimate or the invoice and wanted time to review and limit the request. In other instances, Plaintiff was purportedly asked to clarify her request and chose not to do so.

After full consideration of the parties' arguments, the Court finds that Ms. Gargotta adequately met the Defendant's discovery obligations and complied with the Court's Discovery Order.  Ms. Gargotta explained both the process of pulling the documents in internal affairs and the reasons why delays occurred in this litigation. Plaintiff's contention that sanctions are appropriate because Ms. Mendia's deposition did not occur lacks merit since Ms. Mendia went on leave pursuant to the Family Medical Leave Act and Defendant produced an adequate corporate deponent as her replacement.  Plaintiff's argument is further undermined by the fact that Ms. Gargotta was able to fully answer all questions relating to her department's discovery responses.  *See Capers v. Noah's Ark Repair Serv., Inc.*, 2012 WL 5830588, at *3 (M.D. Fla. Nov. 16, 2012) ("The designating party has a duty to substitute an appropriate deponent when it becomes apparent the previous deponent is unable to respond to certain relevant areas of inquiry.") (citations omitted).  Therefore, Plaintiff's Motion on this basis is **DENIED** because there is no indication that Defendant sought to withhold or delay document productions, nor failed to comply with the Court's Discovery Order in proffering a knowledgeable corporate deponent with respect to internal affairs.

### F.  *Outstanding Discovery*

The final issue that the Court will address is Plaintiff's claims that there are outstanding discovery materials that have not been produced.  Specifically, Plaintiff contends that she has not received: (1) updated personnel records for Deputy Wengert, (2) updated K9 incident reports, and (3) use of force reports involving

Deputy Wengert for incidents occurring on September 15, 2007, January 9, 2008, October 8, 2009, and December 1, 2010.

In response, Defendant argues that, despite Plaintiff's contentions, there are no outstanding materials that have been located and withheld from Plaintiff. Defendant suggests that many of the documents that Plaintiff identifies simply do not exist. When documents have been located, even when believed by Defendant to not exist, they have been allegedly always been provided to Plaintiff. With respect to Plaintiff's argument that she has not received updated personnel records for Deputy Wengert, Defendant contends that Deputy Wengert was inactive for some time. And the few additional documents which have been generated since the last time Plaintiff received Wengert's files have now purportedly been produced. Defendant argues that the same holds true for updated K-9 incident reports authored by Deputy Wengert since May 5, 2015. Defendant notes that Deputy Wengert's last day with K-9 was in June 2015, and therefore there are no further reports authored by Deputy Wengert to produce.

Defendant further argues that Plaintiff's contention – about outstanding use of force reports involving Deputy Wengert – is undermined by the fact that once those requests were made, Defendant followed up with Plaintiff and requested more information. Defendant argues that no response was ever received from Plaintiff. Nonetheless, Defendant purportedly conducted his own research and investigation to learn that there were incidents on September 15, 2007 and January 9, 2008 – both of which involved Deputy Brown as the primary responding officer. Defendant

discovered that Deputy Wengert was involved in the September 15, 2007 incident with Deputy Brown and the file associated with that use of force was produced to Plaintiff along with 75 other use of force reports. Yet, Defendant has no record of Deputy Wengert being involved with a use of force incident on January 9, 2008. The only officer involved in the January 9, 2008 was Deputy Brown and Defendant produced that report to Plaintiff to demonstrate that Deputy Wengert was not involved. As for Plaintiff's request for a use of force report involving Deputy Wengert on October 8, 2009, Defendant located the file Plaintiff received it on April 13, 2017. Although Defendant was unable to locate a use of force report for December 1, 2010 that involved Deputy Wengert, Defendant contends that he requested from Plaintiff any information that might assist in locating a file that may not have been already produced.

Defendant's arguments are again well taken. Defendant appears to have made every effort to fully comply with all of Plaintiff's discovery requests. While Defendant has undoubtedly made errors in the past producing documents, the Court is well aware that the Defendant manages different departments with different personnel and that human error to some extent is inevitable. *See U.S. ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 2009 WL 92826, at *5 (M.D. Fla. Jan. 14, 2009) (denying Rule 37 sanctions because "Lincare has provided ample evidence to support its assertion that its failure to provide Lincare with the First Coast CD containing patient names was nothing more than an innocent mistake."). Furthermore, the Court is mindful that the information sought in this case has

required individuals to investigate and research for materials that are not easily found via a mere push of a button on a computer. Despite these difficulties, Defendant has demonstrated that his personnel have continually worked with their respective departments to double check for any outstanding discovery materials.

On a final note, it appears that the discovery disputes in this action stem from a lack of communication between the parties, rather than any indication that Defendant is withholding documents or delaying their production. The confusion over whether a document pertinent to both the robbery and homicide investigation is a prime example of how a discovery dispute could have been easily avoided if one party had simply sought clarity on the discovery request. Instead of communicating effectively, one party assumes that he has complied with his discovery obligations while the other accuses the opposing party of attempting to hide documents when it becomes clear that other documents might exist. The lack of communication then leads to the proverbial motion to compel and motion for sanctions, when the discovery dispute could have been handled amicably between the parties.

There is no doubt that Defendant has made errors in his discovery responses, but it seems clear that Defendant has made substantial efforts to ensure that the errors and misunderstandings do not occur again. Furthermore, there is no indication that any of the corporate deponents meet the standard for awarding sanctions for a lack of knowledge or preparation. *See Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) ("If [the 30(b)(6) designee] is not knowledgeable about relevant facts, and the principal has failed to designate an

available, knowledgeable and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all."); *Wilson v. Lakner*, 228 F.R.D. 524, 529 (D. Md. 2005) (explaining sanctions for failure to present adequate 30(b)(6) designee depend on "whether there have been good faith efforts to prepare, so that if a witness has rendered substantial testimony concerning the subject areas of their designations sanctions might well not be in order") (internal quotation marks and citation omitted).

Accordingly, there is no basis to impose Rule 37 sanctions on Defendant and Plaintiff's Motion, in its entirety, must be **DENIED**. *See Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1447 (11th Cir. 1985) ("Rule 37 sanctions were designed 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'") (citation and quotation marks omitted).

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Sanctions is **DENIED**.  [D.E. 64].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of May, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge