UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-61595-Civ-COOKE/TORRES

DONNETT M. TAFFE,
Personal Representative of the
Estate of STEVEN JEROLD
THOMPSON, deceased,

    Plaintiff,

vs.

GERALD E. WENGERT and
SCOTT J. ISRAEL,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This action arises from a police shooting that resulted in the death of a young black man. Plaintiff Donnett M. Taffe, Personal Representative of the Estate of Steven Jerold Thompson, deceased, brings suit against the shooter, Defendant Gerald E. Wengert, in his official capacity as a deputy sheriff for the Broward County Sheriff's Office ("BCSO"). Plaintiff also asserts claims against Defendant Scott J. Israel, both individually and in his official capacity as Broward County Sheriff. I have jurisdiction under 28 U.S.C. §§ 1331 and 1367.

Pending is Defendants' Joint Motion for Summary Judgment. (ECF No. 102). For the reasons that follow, I deny the Motion.

## I. BACKGROUND

Wengert began his career as a law enforcement officer in 1999 with the Cooper City Police Department ("CPD"), prior to its merger with BCSO in 2004. (ECF No. 100 ¶¶ 1-2). Before hiring Wengert, CPD screened and interviewed him, and required him to pass various tests, including psychological examinations and a polygraph. (*Id.* ¶ 3). Wengert also submitted to a Florida Department of Law Enforcement background investigation. (*Id.* ¶ 4). According to Defendants, nothing CPD learned about Wengert during the hiring process called his fitness for the job into question. (ECF No. 102 at 17-18).

Now a deputy for BCSO, Wengert regularly participates in training courses and in-service training (ECF No. 100 ¶ 9), and earns consistently high marks in his performance

evaluations. (*Id.* 100 ¶ 5). One evaluator noted that Wengert "is an excellent police officer and . . . is a pleasure to supervise." (ECF No. 100-7 at 42). Another commented that Wengert is an "exemplary employee" who presents a "positive image to the community, businesses, and internal departments." (ECF No. 100-7 at 14, 16). Indeed, according to Defendants, Wengert has received internal commendations and unsolicited praise from the community throughout his service at CPD and BCSO. (ECF No. 100 ¶¶ 7-8).

But Wengert's record as a deputy sheriff is not immaculate. Between 2004-2014, he was involved in more than seventy documented use-of-force incidents, eight of which resulted in Internal Affairs ("IA") investigations.[1] (ECF No. 121-8). He was suspended from July 2012 to May 2013 after being charged with falsifying records, official misconduct, and battery.[2] (ECF No. 120 ¶ 5). He was suspended again in June 2015 pending a State Attorney's investigation into a use-of-force incident that resulted in injuries to a suspect. (*Id.*). In both instances, however, he was cleared of wrongdoing and reinstated. (*Id.*).

Prior to the shooting, BCSO had an Early Intervention Program ("EIP") which required IA to provide written notice to command-level staff "[w]hen employees are identified as being involved in three or more incidents in three months or five incidents in one year." (ECF No. 121-22 at 5). "The EIP report makes no conclusions or determinations concerning job stress, performance problems, or validity of any pending or active investigations of misconduct. The report is designed as a resource to assist supervisors in evaluating and guiding employees." (*Id.*). In theory, command-level staff reviews the EIP report, discusses it with the involved employee, and suggests, in writing, intervention options to higher-ups. (*Id.*). According to Plaintiff, IA issued seven EIP reports about Wengert between 2005 and 2015. (*Id.*). Despite those warnings, no one at BCSO intervened to disrupt Wengert's alleged pattern of misconduct. (*Id.*

On June 5, 2014, Wengert and several other BCSO deputies were responding to a dispatch call regarding a suspected armed robbery in Lauderhill, Florida. (ECF No. 100 ¶ 29-30). Dispatch provided the deputies with descriptions of the suspects based on information gathered from the victims. (*Id.* ¶ 31). "Subject #1 was described to be in his 20s, [5'9" to 5'10"],

---

[1] In each instance, BCSO found Wengert's conduct to be compliant with BCSO policies. (ECF No. 120 ¶ 5).

[2] *State v. Gerald Wengert*, No. 12-10446CF10A.

2

160-170 pounds, low cut wearing dark shirt with dark shorts," and "Subject #2 was described to be 20-30 [years old, 5'8" to 5'9"], 190-200 pounds, also low cut, dark shirt with dark shorts and bright shoes possibly orange." (*Id.*).

Two cell phones – a Sprint phone and an iPhone – were stolen during the robbery. (ECF No. 120 ¶ 32). Using cell-phone tracking software, BCSO located the Sprint phone in Pembroke Pines, some nineteen miles from the crime scene. (*Id.*). The iPhone, on the other hand, was at Cypress Grove Apartments, just four miles away. (*Id.*) The deputies converged on that location to investigate. (*Id.*).

Once on site, the deputies began a search of the apartment complex. (ECF Nos. 100 ¶ 34, 120 ¶ 34). One of the deputies tracking the iPhone observed that it was transmitting from the center of a parking lot in the southern part of the complex. (ECF No. 120 ¶ 35). When the deputies arrived at the south parking lot, they observed two people standing in the area of the iPhone signal. (ECF Nos. 100 ¶ 35, 120 ¶ 35). As the deputies approached them, they saw Thompson, who was at the complex visiting a friend, walk out one of the buildings. (ECF Nos. 100 ¶ 36, 120 ¶ 35). Wengert announced himself as a police officer ordered Thompson to stop. (ECF No. 100 ¶ 36).

Thompson was a twenty-six year old black male standing 5'6" tall and weighing 210 pounds. (ECF Nos. 75 ¶ 47, 120 ¶ 36). He had a moustache and beard, numerous tattoos, a noticeable abrasion-type scar along the left side of his chin and his front four teeth were capped in gold. (ECF Nos. 75 ¶ 47, 120 ¶ 36). He was wearing a black, sleeveless tank top and over-sized athletic shorts. (ECF Nos. 75 ¶ 47, 120 ¶ 36). The shorts had a large white diamond design with a wide orange border that ran from the waistband to the hem on each side of the garment. (ECF Nos. 75 ¶ 47, 120 ¶ 36). He also was wearing a baseball cap with large silver letters spelling AKOO on the front and a pair of Nike Airmax shoes that were predominately black and orange. (ECF Nos. 75 ¶ 47, 120 ¶ 36).

When Thompson saw the deputies, he turned around and reentered the building. (ECF Nos. 100 ¶ 36, 120 ¶ 36). Wengert claims Thompson also reached into his pants for what Wengert assumed to be firearm. (*Id.*). Wengert and another deputy pursued Thompson into the building, while other deputies took up positions outside. (ECF Nos. 100 ¶ 37-40, 120 ¶ 37-40).

Inside the building, Wengert encountered Thompson in a corridor and opened fire.³ (ECF No. 75 ¶ 51, 120 ¶¶ 37-40). In total, Wengert fired twenty-five rounds, which required him to reload. (ECF No. 75 ¶ 55, 120 ¶ 42). He hit Thompson eight times from behind. (ECF No. 75 ¶ 52, 120 ¶ 43). One shot shattered Thompson's femur and caused him immediately to fall. (ECF No. 120 ¶ 43). Wengert fired the lethal ninth shot while Thompson was on the ground. (*Id.*). It entered through his scrotum, perforating his left testicle, the abdominal wall, liver, diaphragm, lung, and ended up in his armpit. (ECF No. 75 ¶ 54, 120 ¶ 43). Thompson died at the hospital later that night. (ECF No. 75 ¶ 60).

Israel travelled to the scene early the next day to initiate an investigation. (*Id.* ¶ 62). According to Plaintiff, the investigation was incomplete and designed to cover up Wengert's misconduct. (*Id.* ¶ 64). She alleges that Israel relied exclusively on Wengert's subjective justification for his actions, and ignored any evidence that did not support Wengert's version of events. (*Id.* ¶ 64). As a result, Plaintiff argues, "Wengert was not prosecuted for the killing of an unarmed man." (*Id.* ¶ 74).

Plaintiff brought this action on May 26, 2016 in Florida state court. (ECF No. 1-1). Defendants removed (ECF No. 1), and Plaintiff filed an Amended Complaint (ECF No. 75) stating five claims for relief:

> **Count I**: State-law assault and battery claim against Wengert, in his official capacity, for unlawfully shooting Thompson (*Id.* ¶¶ 82-85);
>
> **Count II**: Claim under 42 U.S.C. § 1983 against Wengert, in his official capacity, for unlawfully shooting Thompson (*Id.* ¶¶ 86-90);
>
> **Count III**: State-law tort claim against Israel, in his official capacity, for negligent hiring, supervision, and retention, resulting in Thompson's wrongful death (*Id.* ¶¶ 91-101);
>
> **Count IV**: Claim under 42 U.S.C. § 1983 and state law against Israel, in his individual capacity, for negligent hiring, supervision, and retention, resulting in Thompson's wrongful death (*Id.* ¶¶ 102-109); and
>
> **Count V**: Claim under 42 U.S.C. § 1983 against BCSO for negligent hiring, supervision, and retention, resulting in Thompson's wrongful death (*Id.* ¶¶ 110-23).

Defendants seek summary judgment on all Counts. (ECF No. 102).

---

³ Defendants claim that Wengert and Thompson "exchanged gun fire" and were in a "fire fight." (ECF No. 100 ¶ 41). Plaintiff disputes that assertion, arguing that Thompson was not even armed when Wengert shot him. (ECF Nos. 75 ¶ 49, 120 ¶ 44). She points to the fact that the only gun investigators found in the corridor was fifty-one feet from Thompson's body. (ECF No. 120 ¶ 43).

4

## II. STANDARD OF REVIEW

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## III. DISCUSSION

Defendants seek summary judgment on four grounds: (1) Wengert is entitled to qualified immunity (Counts I & II); (2) Israel, in his official capacity, was not negligent in

5

implementing hiring, supervision, and retention policies at BCSO (Count III); (3) Israel, in his individual capacity, was not negligent in hiring, supervising, or retaining Wengert (Count IV); and (4) there can be no municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Count V).

### A. Wengert: Qualified Immunity (Counts I & II)

Wengert claims he is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "Qualified immunity offers 'complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002) (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)).

"As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To receive qualified immunity, a public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (citation omitted). The burden then shifts to the plaintiff to show that qualified immunity is not appropriate. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("Once an officer or official has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff.").

In *Saucier v. Katz*, 533 U.S. 194 (1977), the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Lee*, 284 F.3d at 1194 (quoting *Saucier*, 533 U.S. at 201); and then, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine "whether the right was clearly established." *Lee*, 284 F.3d at 1194. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Marsh v. Butler County*, 268 F.3d 1014, 1031-33 (11th Cir. 2001) (en banc).

Here, as Plaintiff herself concedes, the issue "is not whether [Wengert] had the right to

make arrests, it [is] the manner in which he made arrests or, in this case, killed a citizen, that is at the heart of this lawsuit." (ECF No. 126 at 10-11). There is no question that Wengert was acting within his discretionary authority as a police officer at all times relevant to this action. *See Lee*, 284 F.3d at 1194 (in excessive force case, "there can be no doubt that [the officer] was acting in his discretionary capacity when he arrested [the plaintiff]."). The issue, then, is whether the arrest was lawful.

Plaintiff argues that the arrest violated Thompson's constitutional rights under the Fourth and Fourteenth Amendments. Defendants counter that Wengert had probable cause to make the arrest, and that the force he used was permissible:

> Thompson refused to answer questions and obstructed the lawful investigation which Deputy Wengert was conducting concerning an armed robbery and then upon firing at Deputy Wengert and wielding a firearm at Deputy Wengert, Deputy Wengert had probable cause to arrest Mr. Thompson. Upon Mr. Thompson fleeing from arrest, Deputy Wengert lawfully pursued Mr. Thompson. During the course of the pursuit, Mr. Thompson shot at Deputy Wengert and Deputy Wengert lawfully responded with force including deadly force and acted in self-defense.

(ECF No. 102-5).

If I accepted Wengert's account as true without further inquiry, qualified immunity plainly would apply. Thompson fit the robbery suspects' descriptions, fled police to avoid arrest, and shot at Wengert. Those acts would be more than sufficient to establish probable cause. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985) (probable cause exists when suspect threatens officer with weapon). As for the use of deadly force, it is well settled that a police officer can use such force when he feels he or another person in under imminent threat of severe bodily harm or death. *See, e.g.*, *McCormick v. City of Ft. Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003). In other words, if Thompson was shooting at Wengert, Wengert had every right to shoot back.

But Plaintiff disputes almost every aspect of Wengert's story. She contends, *inter alia*, that Thompson had nothing to do with the robbery, did not fit the robbery suspects' descriptions, did not flee arrest, was not armed, and did not shoot at Wengert. Under those facts, there would have been no probable cause for Thompson's arrest, no legal reason for Wengert to shoot him, and therefore no qualified immunity.

Of course, a third possibility exists: perhaps neither side's version of events is

completely accurate, and the truth lies somewhere in between. Clearly, questions of material fact remain precluding summary judgment in Wengert's favor on Counts I & II. I will revisit Wenger's qualified immunity claim after trial with the benefit of a complete record.

### B. Israel: Official Capacity (Count III)

Count III alleges that Israel, as Broward County Sheriff, was negligent in implementing hiring, supervision, and retention policies at BCSO. "To establish a claim for negligent hiring, supervision and/or retention, a plaintiff must prove that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees." *Spadaro v. City of Miramar*, 2013 WL 495780, at *13 (citing *Magill v. Bartlett Towing, Inc.*, 35 So. 3d 1017, 1020 (Fla. Ct. App. 2010)). "Additionally, the employer's failure to investigate or take corrective action 'must be the proximate cause of the plaintiff's harm,' and there must be 'a connection and foreseeability between the employee's employment history and the current tort committed by the employee.'" *Blue*, 2011 WL 2447699, at *4 (citations omitted).

Here, setting aside whether Israel was negligent in implementing hiring, supervision, and retention policies at BCSO, a question of fact remains as to whether Wengert committed a tort against Thompson. If Wengert was faultless in the shooting and there was no tort, then Plaintiff has no claim against Israel. As discussed above, whether Wengert was at fault turns at least in part on whether Thompson was firing a gun at him. *See supra* Part III.A. That question, among others, is a matter of vigorous dispute between the parties. I therefore decline to grant summary judgment as to Count III.

### C. Israel: Individual Capacity (Count IV)

Count IV is a § 1983/state law wrongful-death claim against Israel, in his individual capacity. Federal law is silent on the question of whether a decedent's legal representative can bring a section 1983 claim for the decedent's death. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103 (9th Cir. 2014). Under 42 U.S.C. § 1988, when federal law is "deficient" in the provision of suitable remedies, state statutory or common law applies, unless it is inconsistent with the Constitution or federal law, in which case that state statutory or common law does not apply. *See Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1329-35 (N.D. Fla. 2017) (applying state statute to § 1983 wrongful death claim). I therefore look to Florida's wrongful death statute, Fla. Stat. § 768.19, to assess Count IV. Section 768.19 creates a cause of action when "the death of a person is caused by the wrongful conduct, negligence, default, or breach of contract or warranty of any person."

Here, Plaintiff asserts that Israel was "deliberately indifferent"[4] about (1) "his duties in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise, control or otherwise screen employees of [BCSO] including, but not limited to, [Wengert], for dangerous propensities, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties," and (2) "the safety of the public, including [Thompson], by failing to remedy these problems, even though he had notice of them." (ECF No. 75 ¶¶ 106-09). Plaintiff argues Israel's alleged deliberate indifference violated § 1983 and state law.

Plaintiff claims Israel is liable as Wengert's supervisor. "Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Braddy v. Florida Dep't of Labor and Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). A "causal connection" may exist if a supervisor had the ability to prevent or stop a known constitutional violation by exercising his supervisory authority and he failed to do so. *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy*, 133 F.3d at 802.

Here, there is no evidence that Israel personally participated in the shooting. Plaintiff instead argues that the evidence shows a causal connection between the shooting and Israel's alleged indifference about hiring, supervising, and retaining Wengert. Even assuming Plaintiff is correct, and there is a causal connection, she still must prove an underlying constitutional violation or tort, otherwise the claims against Israel fall apart. As there are open questions about the circumstances of the shooting, summary judgment as to Count IV is not warranted.[5]

---

[4] To demonstrate a claim of deliberate indifference, a plaintiff must show: (1) subjective knowledge of a risk of serious harm due to the lack of certain policies, or the failure to adhere to existing policies; (2) disregard of that risk; and (3) conduct that is more than gross negligence. *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (citing *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (internal quotation marks omitted)).

[5] Defendants also argue that Israel is entitled to sovereign immunity. It is well-settled, however, that "[t]he retention and supervision of a [police officer] by a [police department] are not acts covered with sovereign immunity." *Slonin v. City of West Palm Beach*, 896 So. 2d 882, 884 (Fla. Ct. App. 2005).

### D. Plaintiff's *Monell* Claim (Count V)

In Count V, Plaintiff seeks to hold BCSO liable for Wengert's alleged misconduct under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that a municipal corporation can be named as a defendant in a § 1983 action. *Id.* at 701. To establish municipal liability under § 1983, a plaintiff must prove that: "(1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to his constitutional rights, and (3) the policy or custom caused the violation of his constitutional rights." *Ludaway v. City of Jacksonville*, 245 F. App'x 949, 951 (11th Cir. 2007) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Thus, as is the case with Counts III and IV, Count V hinges, at least in part, on whether Wengert violated Thompson's constitutional rights. Defendants are therefore not entitled to summary judgment on Count V.

### IV. CONCLUSION

The common denominator of Plaintiff's claims is that each requires proof that Wengert committed an unlawful act when he shot and killed Thompson. If he did not, all of Plaintiff's claims fail as a matter of law. It therefore might be beneficial to resolve that issue at trial before moving on to hiring, supervision, and retention issues. If the parties agree with the Court's assessment, they should consider how the trial might be structured to achieve that result. In any event, Defendants' Joint Motion for Summary Judgment (ECF No. 102) is **DENIED**.

**DONE** and **ORDERED** in chambers at Miami, Florida, this 31st day of January 2018.

*Marcia G. Cooke*
_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*